UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| TERRANCE DARNELL McCALL, | Civil Action No.: 4:11-cv-1324-RMG-TER |
| Plaintiff, | |
| -vs- | **REPORT AND RECOMMENDATION** |
| DEPUTY JEFF STRICKLAND; THE SPARTANBURG COUNTY SHERIFF'S DEPARTMENT, | |
| Defendants. | |

## PROCEDURAL HISTORY

Plaintiff, who is proceeding pro se in this action, alleges causes of action under 42 U.S.C. § 1983 for excessive force during his arrest on February 19, 2010, and that his personal items have been unlawfully withheld. Presently before the Court is Defendants' Motion for Summary Judgment (Document #40).[1] Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' Motion could result in a recommendation that the motion be granted. Plaintiff filed a Response (Document # 44).

## STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. Because the present Motion is dispositive, this Report and Recommendation is entered for review by the district judge.

judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

2

**FACTS**

Plaintiff's version

Plaintiff alleges in his verified complaint[2] (Doc. # 1), that on February 19, 2010, he was arrested by Sheriff Deputy Chris Wilbanks. About fifteen minutes later, Plaintiff alleges that Deputy Jeff Strickland of the SCSD walked over to him while he was in handcuffs and sitting on the ground in custody and "punched me in my face for no reason at that time. His punch to my face broke my top dentures and I had to have 6 stitches put in my face." (Complaint p. 3). Plaintiff requests that the court find Deputy Strickland guilty and order him to pay Plaintiff the sum of $7500.00 for mental and physical pain. (Complaint p. 5).

Defendants' version

Defendants submitted several affidavits in support of the motion for summary judgment. The affidavits of Harrell and Strickland correspond to the events pertaining to the initial stop and chase of the driver of the vehicle.[3] Their version of the facts are set forth below. On February 19, 2010, Strickland and Deputy Leslie Harrell initiated a traffic stop in Spartanburg County on a Toyota Celica for a tinted cover on the license plate. As Harrell questioned the driver, Kenneth Earl Woodruff, II, he was acting extremely nervous and was stuttering when responding to questions. Harrell asked him why he was acting this way and he replied that police officers scare him. Harrell then asked Woodruff to

---

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case

[3] See Affidavits of Strickland and Harrell.

3

exit the vehicle so he could continue his questioning, and Strickland asked the passenger, McCall, to exit the vehicle. As Harrell began his pat down of Woodruff, Woodruff continued to take his hands off the vehicle and turned to look at Harrell. During the pat down, Harrell felt a large bulge in his pants. Harrell asked Woodruff for his consent to fully search him and the vehicle, and Woodruff gave his consent. Harrell also asked Plaintiff if he could search him and McCall gave his consent. An off duty Spartanburg Public Safety Officer was also on the scene. Shortly after Woodruff had given his consent to be searched, Harrell found a small bag of green plant material in his pocket. As soon as Harrell asked him to turn around, Woodruff took off running and the officers pursued. After running about 80 yards, Strickland realized that he couldn't catch up to the others and returned to deal with Plaintiff.

When Strickland returned, Plaintiff was standing at the patrol car with his arms crossed in a non-threatening manner. However, for safety, Strickland advised Plaintiff that he was going to place him in investigative detention. Plaintiff acknowledged his understanding of what Strickland was doing and allowed him to place a handcuff on his left wrist. However, as Strickland was attempting to place the handcuff on his right wrist, Plaintiff turned suddenly and struck Strickland in the fact. At that time, Plaintiff and Strickland began to struggle.[4] A civilian, Mark Giambiasi, stopped to try and render assistance to Strickland but was unsuccessful in trying to help subdue Plaintiff but was able to radio for help from Strickland's patrol car.[5]

As Strickland and Plaintiff struggled, Plaintiff was able to retrieve a pistol from a holster on his right leg. Plaintiff put the Pistol to Strickland's throat and told him to give Plaintiff his service pistol or he was going to kill Strickland. When Strickland refused, Plaintiff pulled back the hammer

---

[4] See affidavit of Strickland.

[5] See affidavit of Strickland and Giambiasi

4

on his pistol back and told Strickland that he was going to kill him if he did not give him the pistol. Fearing for his life, Strickland gave his pistol to Plaintiff. Plaintiff started to flee the scene but for some reason, Plaintiff turned around and started back towards Strickland now pointing both pistols at him. However, backup law enforcement vehicles were arriving on the scene and Plaintiff took off running.

Deputy Chris Wilbanks (Wilbanks), driving an unmarked car, pulled in front of Plaintiff and cut him off. Wilbanks ordered Plaintiff to the ground and he appeared to comply. As Wilbanks and two other law enforcement officers attempted to handcuff Plaintiff, Plaintiff resisted and tried to raise himself off the ground. Wilbanks struck Plaintiff in the face. After Plaintiff was finally handcuffed and seated on the ground, he continued to yell obscenities at Strickland who approached the Plaintiff and ordered him to stop his disruptive behavior.[6]

It is at this point that the version of the facts are somewhat different depending on the affidavit. Defendants submitted the affidavit of Chris Wilbanks (Wilbanks) who attests that at the time of the incident he was a Deputy with the Spartanburg County Sheriff's Office. (Wilbank's affidavit, doc. # 40-2). Wilbanks attests that he responded to "an officer needs assistance" call. (Id.). When he arrived, Wilbanks exited his vehicle and ordered Plaintiff to get on the ground. (Id.). When the Plaintiff was on the ground, Wilbanks holstered his weapon and went to handcuff Plaintiff when he noticed that Plaintiff already had a set of handcuffs on his left hand. (Id.). As Wilbanks began to put the cuffs on his right hand, Plaintiff pulled both of his hands back under his body. (Id.). Wilbanks was not sure where the pistol he had thrown to the ground was at that time so he "struck McCall in the face with my right fist. A Spartanburg City Police Officer then arrived and helped me finish handcuffing McCall." (Id.). Wilbanks asserts that the photograph attached to the memorandum as "Exhibit A" depicts Plaintiff's face after Wilbanks had struck him as he resisted arrest and the damage shown was

---

[6] See affidavit of Wilbanks and Feliciano.

5

not caused by Deputy Strickland. (Id.). Wilbanks asserts that he used only the amount of force necessary to cause Plaintiff to be handcuffed and secured. (Id.). Wilbanks attests that after Plaintiff was handcuffed and sitting on the ground, Plaintiff continued to mouth off at Deputy Strickland. (Id.). Wilbanks states that "[a]t one point I saw Strickland put his finger in McCall's face, but I never observed Strickland strike McCall in his face."(Doc. #40-2, p. 2).

Defendants submitted the affidavit of Danford Piggins (Piggins) who attests that at the time of the incident, he was a Deputy with the SCSD, holding the rank of First Sergeant. (Piggins' affidavit, doc. # 40-3). Piggins responded on February 19, 2010, to "an officer needs assistance" call. When he arrived, Deputy Chris Wilbanks and Spartanburg Public Safety Officer David Feliciano had just finished handcuffing Plaintiff and Piggins rendered his assistance to them. (Id.). Piggins attests that the photograph of Plaintiff marked as "Exhibit A" was taken in the back of his patrol car and depicts Plaintiff's face after Deputy Wilbanks had struck him for resisting arrest and the damage was not caused by Deputy Strickland. (Doc. #40-3).

Defendants submitted the affidavit of David Feliciano ("Feliciano") who attests that he was an Officer with the Spartanburg Public Safety Department on February 19, 2010, when he saw several SCSD vehicles at the intersection of Wofford Street and N. Forest Street. (Feliciano affidavit, doc. #40-4). Feliciano also saw a man running in an open field and "the Buick" jump the curve. (Id.). Plaintiff slowed down and as Sheriff's Deputy Wilbanks exited the Buick, Feliciano saw Plaintiff throw a pistol into the open field. (Id.). As Wilbanks began to put the cuffs on Plaintiff, he immediately began to resist when Feliciano arrived to render assistance. (Id.). Despite repeated commands to stop resisting from both Deputy Wilbanks and Feliciano, Plaintiff would not comply so that Wilbanks struck Plaintiff once with his right fist. (Id.). Plaintiff finally complied and was only able to be handcuffed when Public Safety Officer D. A. Hearst arrived on the scene. (Id.). Feliciano attests

6

that the photograph attached as "Exhibit A" depicts Plaintiff's face after Wilbanks struck him as he resisted arrest. (Id.). After Plaintiff was handcuffed and sitting on the ground, Plaintiff continued verbal exchanges with another Sheriff's Deputy, Deputy Strickland, but Feliciano could not hear what was being said but "[a]t one point saw Strickland push McCall's face with his open hand." (Doc. #40-4, p. 2).

Defendants submitted the affidavit of Jeff Strickland ("Strickland") who attests to the background facts as set out above. With respect to the alleged incident after Plaintiff was handcuffed, Strickland asserts that Plaintiff continued to yell obscenities at him. (Strickland affidavit, doc. #40-5). Strickland attests that "I approached him and ordered him to stop his disruptive behavior but he refused and attempted to stand up. I then grabbed the collar of his shirt and placed him back on the ground. I never struck McCall in the face while he was handcuffed." (Doc. # 40-5, p. 3).

Defendants submitted the affidavit of Mark Giambiasi ("Giambiasi") who attests that on February 19, 2010, he was on his way to purchase kerosene when he saw a struggle taking place between a Spartanburg County Sheriff's Deputy and another man in the Integral parking lot located on Wofford Street in Spartanburg County. (Giambiasi affidavit, doc. # 40-7). Giambiasi later found out the Deputy was Jeff Strickland and the man was Terrance McCall. (Id.). When Giambiasi approached Plaintiff, he had a handcuff on his left hand and heard Strickland say "he's got a gun." (Id.). Giambiasi tried to grab Plaintiff's leg but he hit him with the handcuffs knocking him back. Giambiasi tried again but Plaintiff knocked him back again. (Id.). Giambiasi then heard Plaintiff scream "I'm gonna shoot this cracker" so he got in Strickland's patrol car and radioed for help. (Id.). At one point, Plaintiff had a pistol pointed at Giambiasi while he was in the patrol car but then fled. (Id.). Giambiasi attests that at no point did he observe Strickland strike Plaintiff while he was in handcuffs and fully subdued and that the damage done to Plaintiff's face as shown in the photograph

7

as "Exhibit A" was not done by Strickland but by another officer after Plaintiff had fled from the Integral parking lot. (Doc. # 40-7).

Defendants submitted the affidavit of Timothy Brochin ("Brochin") who attests that he was an Officer with the Spartanburg Public Safety Department. (Brochin affidavit, doc. #40-8). On February 19, 2010, he was driving in his personal vehicle after working first shift when he heard a call from Spartanburg Public Safety Officer Tony Edwards that he and a Spartanburg Sheriff's Deputy were chasing a suspect on foot. (Id.). Since he was in the vicinity he decided to go and assist. (Id.). When he arrived on the scene, there were multiple law enforcement vehicles in a field located at the intersection of N. Forest Street and Wofford Street so he pulled his vehicle into the field and exited to assist. (Id.). Brochin observed Feliciano and two Sheriff's Deputies attempting to get Plaintiff handcuffed.[7] (Id.). Plaintiff was on the ground but still appeared to be actively resisting and observed a pistol on the ground near Plaintiff and other Officers and stood by it for safety purposed and evidence preservation. (Id.). After Plaintiff was handcuffed and seated on the ground, Plaintiff continued to yell at Deputy Jeff Strickland, although he could not make out what Plaintiff was yelling. Strickland, along with Deputy Piggins, approached Plaintiff and "Strickland briefly put his open hand in McCall's face, told McCall to 'shut up' and then walked away with Deputy Piggins. I never observed Strickland strike McCall in his face with a closed fist. Furthermore, the appearance of McCall's face as shown in the photograph attached as 'Exhibit A' was already like that before I ever saw Strickland approach him." (Id.). Brochin attests that, based on his observations, Strickland exercised great restraint in his dealings with McCall after the incident. (Id.).

---

[7] Bochin entered a footnote in his affidavit asserting that he had mistakenly stated in his incident report that one of the Sheriff's Deputies was Jeff Strickland. However, after the fact, he discovered who deputy Strickland was, and he was not one of the deputies attempting to handcuff McCall. Brochin stated that he now knows the identity of the Deputies trying to cuff McCall to be Chris Wilbanks and Danford Piggins.

As to the items of personal property Plaintiff complains were taken from him, Defendants assert the issue is moot because the items were released to Plaintiff's Aunt Dianne Hollis on July 12, 2011.

**EXCESSIVE FORCE**

Protection against force during arrest is provided by the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). All claims of use of excessive force during an investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. Id. The test for excessive force in the arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The standard for measuring reasonableness of arrest is wholly objective. The objective reasonableness test requires careful attention to the circumstances of a particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396; Foote v. Dunagan, 33 F.3d 445 (4th Cir.1994). The focus is on reasonableness at the moment, recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham, 490 U.S. at 396.

The facts in the present case are in dispute with regard of whether Strickland struck Plaintiff in the face after he was handcuffed and on the ground. When viewed in the light most favorable to Plaintiff, the facts reveal that Plaintiff was apprehended, handcuffed and sitting on the ground when Defendant Strickland approached him. One of the affidavits states that Strickland put his "finger" in

9

Plaintiff's face, one states that he put his "open hand" in Plaintiff's face, one states that he never observed Strickland strike Plaintiff while he was in handcuffs and fully subdued, one states that he saw Strickland "push McCall's face with his open hand," one states that the damage done to Plaintiff's face as depicted in the photograph was not caused by Deputy Strickland, and Defendant Strickland attests that after Plaintiff continued to yell obscenities at him while handcuffed and seated on the ground, he ordered him to stop and when he refused and attempted to stand, "I then grabbed the collar of his shirt and placed him back on the ground. I never struck McCall in the face while he was handcuffed." Based upon these facts, a genuine dispute of material fact exists. As set forth, Plaintiff's version of the facts indicate Strickland struck Plaintiff in the face while on the ground in handcuffs. Although the affidavits submitted by the Defendants universally indicate either Plaintiff was struck in the face by Deputy Wilbanks or was not struck in the face (at least not with a closed fist) by Deputy Strickland, the undersigned is constrained by the dictates of Rule 56 to view the evidence in the light most favorable to the non-moving party. While the evidence is substantially in favor of the Defendants, the affidavits submitted by Defendants and Plaintiff's verified complaint present an issue of material fact. Therefore, summary judgment is not appropriate on Plaintiff's excessive force claim against Defendant Strickland.

### SPARTANBURG COUNTY SHERIFF'S DEPARTMENT

Defendants assert that the claims against the Spartanburg County Sheriff's Department (SCSD) should be dismissed as it is not a person subject to suit under 42 U.S.C. §1983 as it is group of buildings or a facility.

The SCSD is immune from suit. Sheriff's Departments in South Carolina are state agencies,

not municipal departments. See S.C.Code Ann. § 23–13–550 (2008); 1975 S.C.Att'y.Gen'l.Op. No. 47 (Jan. 22, 1975); and S.C.Code Ann. § 23–13–10 (2008), which provides that only the Sheriff has the authority to hire or terminate employees of the Sheriff's Department, and that the Sheriff is responsible for neglect of duty or misconduct by a deputy sheriff. See also Edwards v. Lexington County Sheriff's Department, 386 S.C. 285, 287 n. 1, 688 S.E.2d 125, 127 n. 1 (2010) ( "However, under South Carolina law, the sheriff and sheriff's deputies are State, not county, employees."); Allen v. Fidelity and Deposit Company, 515 F.Supp. 1185, 1189–91 (D.S.C.1981) (County cannot be held liable for actions of deputy sheriff because deputy sheriffs serve at pleasure of the Sheriff, not the County), affirmed, 694 F.2d 716 (4th Cir.1982) [Table]; and Comer v. Brown, 88 F.3d 1315, 1332 (4th Cir.1996) (suit against Sheriff of Greenville County: "... Sheriff Brown is an arm of the State."). Indeed, any damages to the Plaintiff, if awarded in this case, would be paid by the South Carolina State Insurance Reserve Fund. Comer v. Brown, 88 F.3d at 1332 ("Judgments against the Greenville County Sheriff are paid by the South Carolina State Insurance Reserve Fund."). Therefore, it is recommended that the SCSD be dismissed as a party Defendant.

**PERSONAL PROPERTY**

Plaintiff alleged in his complaint that the Defendants were unlawfully holding his personal property. (Rosenberg's affidavit). Defendants submitted the affidavit of Robert Rosenberg ("Rosenberg") who attests that he is the Evidence Custodian Officer with the SCSD. (Id.). On July 12, 2011, Plaintiff's Aunt, Dianne Hollis, picked up the following items of personal property from the SCSD: a pair of Levi's jeans, a black belt, a pen, an elbeco black hat, a black knit hat, a pair of Nike shoes, a Bic lighter, a key chain with keys, a brown wallet with a SunTrust Visa debit card, and

11

$217.00 in cash. (Id.). Those items are designated as Item Nos. 2,3,4,5,6,7 on the "property Report" along with a copy of Ms. Hollis' Driver's license both attached to Roseburg's affidavit. (Id.).

As it appears Plaintiff's personal property was returned to his Aunt Dianne Hollis, this issue is moot. Therefore, it is recommended that Defendants' motion for summary judgment be granted with respect to this issue.

## CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (doc. # 40) be granted in part and denied in part. Specifically, it is recommended that summary judgment be granted as to all of Plaintiff's claims against the Spartanburg County Sheriff's Department and his claim for the return of his personal property and that summary judgment be denied as to Plaintiff's claim against Strickland for excessive force.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 1, 2012
Florence, South Carolina

**The parties are directed to the important information on the following page.**